IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **GREAT LAKES INSURANCE SE,** )  )  | |
| Plaintiff, ) )  | |
| v. ) )  | CIVIL ACTION 20-0467-WS-N |
| **JAMES DUNKLIN**, *et al.*, ) )  | |
| Defendants. )  | |

**ORDER**

This matter comes before the Court on the Motion to Dismiss (doc. 15) filed by defendant Estate of John Lee Bratton, Jr. ("Estate of Bratton"). The Motion has been briefed and is now ripe for disposition.[1]

**I.   Background.**

This is an interpleader action brought by plaintiff, Great Lakes Insurance SE ("Great Lakes"), arising from a tragic boating accident that occurred on Mobile Bay on April 24, 2020. According to the well-pleaded factual allegations of the Second Amended Complaint in Interpleader and for Declaratory Judgment, Great Lakes issued a homeowner's insurance policy to defendant James Dunklin (the "Dunklin Policy"), with policy limits of $300,500 for property damages or bodily injuries caused by an occurrence for which Dunklin was personally liable. (Doc. 13, ¶¶ 10, 14.) On the date in question, Dunklin is alleged to have operated his boat too closely behind a vessel in which decedent John Lee Bratton, Jr. and defendant Shonda M. Brennan were traveling. (*Id.*, ¶ 11.) Dunklin's vessel allided with the Bratton/Brennan vessel, causing property damage, injuring Brennan, and killing Bratton. (*Id.*) Great Lakes indicates that the Estate of Bratton has made demand against Great Lakes for the policy limits on the Dunklin

---

[1]   The Court observes that movant has filed a 17-page reply brief (doc. 25). This filing exceeds, without prior leave of court, the 15-page briefing limit prescribed by Civil L.R. 7(e), and as such is subject to being stricken. In the Court's discretion, however, and in the interest of avoiding additional expense and delay in resolution of this Rule 12(b) Motion, Estate of Bratton's reply will be considered in its current form.

Policy for the wrongful death of John Lee Bratton, Jr. (*Id.*, ¶ 12.) Great Lakes further alleges that Dunklin has notified it that Brennan also intends to make a claim against the Dunklin Policy for personal injuries and property damage accrued in the subject accident. (*Id.*, ¶ 13.)[2] According to the Second Amended Complaint, Great Lakes "is ready and willing to pay the Policy's $300,500.00 limits to the persons entitled to them, but [Great Lakes] cannot do so without exposing itself to potential multiple liabilities or litigation." (*Id.*, ¶ 14.)

Faced with these circumstances, Great Lakes did what insurance companies often do, to-wit: It filed an interpleader action in federal court. In that action, Great Lakes expresses willingness to tender the requisite $300,500 to the Clerk of Court for deposit into the court registry, requests that this Court determine to whom the money should be paid (as between defendants/claimants Estate of Bratton and Brennan, as well as the insured, Dunklin), and represents that it has commenced this action "of its own free will and to avoid being vexed and harassed by conflicting and multiple claims to the $300,500.00." (*Id.*, ¶ 20.) In addition to the interpleader claim, Great Lakes brings a cause of action for declaratory judgment asking this Court to declare that, pursuant to the Dunklin Policy, "aside from paying out the amounts it is bound to cover under the Policy's limits, [Great Lakes] has no further duty to defend or indemnify [Dunklin] against the claims asserted by any Defendant." (*Id.*, ¶ 26.)

The Second Amended Complaint predicates federal jurisdiction on both the diversity provisions of 28 U.S.C. § 1332 (based on allegations that Great Lakes is a citizen of Germany for diversity purposes, while defendants are all citizens of Alabama, and the amount in controversy far exceeds $75,000, exclusive of interest and costs) and the statutory interpleader provisions of 28 U.S.C. § 1335. With respect to the latter jurisdictional foothold, Great Lakes reasons that § 1335 jurisdiction attaches in this matter because Great Lakes "has in its possession money with a

---

[2] In her Amended Answer, defendant Brennan has admitted the allegations of Paragraph 13 of the Second Amended Complaint. (Doc. 24, ¶ 13.) As such, it appears undisputed that Brennan intends to make a claim on the Dunklin Policy for personal injuries and property damage she sustained in the accident. Likewise, Estate of Bratton has affirmatively stated in a court filing that it "made a demand for wrongful death against the policy for the entire coverage limits." (Doc. 15-2, PageID.204, ¶ 11.) In short, the pleadings are clear that Great Lakes faces multiple conflicting demands from defendants Estate of Bratton and Brennan for the proceeds of the Dunklin Policy, and that those demands collectively exceed the available funds.

value greater than $500 and … two or more adverse claimants are making a claim to be entitled to such money." (*Id.*, ¶ 6.)

In response, Estate of Bratton filed a "Rule 12(b) Motion to Dismiss," wherein it argues that Great Lakes is engaged in improper "jurisdictional manipulation" and that dismissal of this action is warranted under principles of *Wilton / Brillhart* abstention. (Doc. 15-1, PageID.186.) Estate of Bratton further posits that this case involves solely matters of Alabama insurance law and that "[t]here is a more appropriate parallel state court action with the same parties" brought by the Estate and currently pending in state court "that will fully resolve all the factual and legal disputes raised in this case." (*Id.*, PageID.186-87.)[3]  Great Lakes opposes the Rule 12(b) Motion, arguing that federal jurisdiction is proper, that *Wilton / Brillhart* abstention is inapplicable, and that this Court should exercise jurisdiction over this matter in any event.

## II. Analysis.

### A. Interpleader and Federal Jurisdiction.

The appropriate starting point of the analysis is to focus on the threshold question of whether federal subject-matter jurisdiction is present in this action at all. The Court answers this question in the affirmative.

---

[3] The parallel state action (the "State Action") takes the form of a "Complaint for Bad Faith & Wrongful Death" filed by Estate of Bratton in the Circuit Court of Mobile County, Alabama on November 2, 2020, or some six weeks <u>after</u> Great Lakes filed its Complaint in this District Court to commence these proceedings. The State Action names Great Lakes, Dunklin and Brennan as defendants. In particular, Estate of Bratton brings a claim against Great Lakes for "bad faith failure to investigate and pay / breach of contract," alleging that Great Lakes "intentionally refused and delayed paying [the Estate's] claim without any reasonably legitimate or arguable reason" and, alternatively, "failed to determine whether there is a legitimate or arguable reason to refuse or delay to pay the claim." (Doc. 15-2, PageID.207.) Estate of Bratton also asserts a separate claim against both Dunklin and Brennan for negligence and recklessness, alleging that Dunklin breached a duty of care owed to John Bratton by operating his vessel to follow too closely the vessel in which Bratton was a passenger, and that Brennan breached a duty of care owed to Bratton by failing to avoid causing an unreasonable risk of injury in operating the vessel in which Bratton was a passenger. (*Id.*, PageID.207-08.) Great Lakes has moved to dismiss Estate of Bratton's claims against it in the State Action for failure to state a claim for the stated reasons that (i) the Estate has not yet obtained a judgment or settlement against Great Lakes' insured (Dunklin), and (ii) the Estate's bad faith and breach of contract claims against Great Lakes are not truly independent of this interpleader action, and Alabama courts have recognized that "an interpleading stakeholder cannot logically be subjected to a claim alleging bad faith refusal to pay." (Doc. 21-1, PageID.260.)

As noted, Great Lakes has pleaded, among other things, that federal jurisdiction is conferred by 28 U.S.C. § 1335, which provides that district courts have original jurisdiction of interpleader actions involving money or property valued at $500 or more, where there are two adverse claimants of diverse citizenship. It is well settled that statutory interpleader actions require only minimal diversity, not complete diversity; however, minimal diversity is a jurisdictional prerequisite under § 1335, meaning that at least two of the adverse claimants to the interpleaded funds must be of diverse citizenship. *See, e.g., Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 356 (6th Cir. 2018) ("In order to properly invoke statutory interpleader, a stakeholder must satisfy the statutory jurisdictional requirements by properly pleading … minimal diversity among the competing claimants."); *Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1007 n.1 (9th Cir. 2012) ("For statutory interpleader, 28 U.S.C. § 1335, there must be diversity between the adverse claimants.") (citation omitted); *Allstate Ins. Co. v. Young*, 923 F. Supp. 1559, 1561 (S.D. Ga. 1996) ("Statutory interpleader … requires **minimal diversity among at least two adverse claimants**.") (emphasis in original). No such minimal diversity exists here. Indeed, the Second Amended Complaint expressly pleads that the only two claimants, defendants Brennan and Estate of Bratton, are both citizens of Alabama for jurisdictional purposes. (Doc. 13, PageID.128, ¶¶ 3-4.) In the absence of any showing of minimal diversity among the adverse claimants to the subject insurance proceeds, statutory interpleader is unavailable as a jurisdictional basis for Great Lakes here.

That being said, in the alternative to statutory interpleader, the Second Amended Complaint invokes diversity jurisdiction pursuant to 28 U.S.C. § 1332. In that context, this case would take the form of a so-called "rule interpleader" action pursuant to Rule 22, Fed.R.Civ.P. That rule provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Rule 22(a)(1), Fed.R.Civ.P. "For Rule 22 interpleader, diversity requires the stakeholder – the party seeking adjudication of multiple claims against it – to be diverse from the claimants." *Weaver v. Metropolitan Life Ins. Co.*, 939 F.3d 618, 623 (5th Cir. 2019) (footnote omitted); *see also Federated Mut. Ins. Co. v. Moody Station and Grocery*, 821 F.3d 973, 976-77 (8th Cir. 2016) ("Rule interpleader requires that the plaintiff … be of diverse citizenship to all defendants, and that the amount in controversy be greater than $75,000.") (citations and internal quotation marks omitted). The § 1332 jurisdictional requirements are plainly satisfied here, inasmuch as Great Lakes has pleaded (and

no defendants have denied) that it is a German citizen for diversity purposes, whereas all defendants are citizens of Alabama, and the $300,500 amount in controversy greatly exceeds the $75,000 jurisdictional minimum.  The Court therefore readily concludes that federal subject-matter jurisdiction properly lies here.  All arguments to the contrary in Estate of Bratton's Rule 12(b) Motion briefing are rejected.[4]

    **B.    Abstention.**

Estate of Bratton's briefs are laden with inflammatory language accusing Great Lakes of impropriety in initiating these federal proceedings.  According to Estate of Bratton, Great Lakes is engaged in "forum shopping" and "jurisdictional manipulation."  (Doc. 15-1, PageID.186.)  The Estate of Bratton says Great Lakes is attempting to "pass[] the buck to federal courts," that it "seeks to usurp the true plaintiff's … choice of forum," and that "it raced to the courthouse and clearly sought to handcuff us to a federal forum."  (*Id.*, PageID.188-89.)  In Estate of Bratton's view, Great Lakes' conduct amounts to "procedural fencing" and "improper maneuvering."  (*Id.*,

---

[4] For example, Estate of Bratton contends in its reply that diversity jurisdiction is lacking because "the real dispute is between the claimants, who are all *not* diverse from one another."  (Doc. 25, PageID.289.)  As this Court has explained before, "In rule interpleader actions that initially satisfy the diversity and amount-in-controversy requirements of § 1332, federal courts have continued to exercise jurisdiction after the dismissal of the stakeholder, even though the remaining parties (*i.e.*, the claimants) are not diverse from each other. … Accordingly, notwithstanding the fact that both claimants (the sole remaining parties) are Alabama citizens, the discharge of [the insurer/stakeholder plaintiff] at this time in no way impairs the Court's jurisdiction over the competing claims … to the interpleaded funds."  *American General Life Ins. Co. v. Jones*, 2008 WL 4949847, *1 n.3 (S.D. Ala. Nov. 13, 2008).  Nor does Estate of Bratton's alternative argument resonate, that the citizenship of Dunklin, Great Lakes' insured, "must be imputed to Great Lakes for purposes of the diversity analysis."  (Doc. 25, PageID.289.)  Estate of Bratton would apparently hang its hat on the "direct action" provision of § 1332(c)(1); however, this case is not a "direct action against the insurer of a policy or contract of liability insurance," so that subsection is inapplicable.  *See, e.g., Kong v. Allied Professional Ins. Co.*, 750 F.3d 1295, 1300 (11th Cir. 2014) ("for purpose of demonstrating diversity, a direct action is one in which an injured third-party claimant sues an insurance company for payment of a claim without first joining or obtaining judgment against the company's insured"); *Home Indem. Co. v. Moore*, 499 F.2d 1202, 1205 (8th Cir. 1974) ("Here we do not have a direct action against an insurer based upon tort or contract liability, but rather an interpleader suit by an insurer …. Indeed, no direct action statute is involved in any way.").  For all of these reasons, federal subject matter jurisdiction properly lies in this rule interpleader action pursuant to 28 U.S.C. § 1332.

PageID.199.)  But the facts before the Court do not support these harsh characterizations of Great Lakes' course of conduct.

From Great Lakes' standpoint, the dilemma created by the underlying circumstances is clear and intractable.  Its insured, Dunklin, was involved in a catastrophic boating accident that claimed the life of Bratton and inflicted personal injuries on Brennan.  The Alabama Boating Accident Report prepared by the investigating law enforcement agency – and appended to the Second Amended Complaint as an exhibit – lists as contributing factors to the accident Dunklin's "improper lookout," "operator inattention," and "operation too close to other vessel/person in the water."  (Doc. 13-2, PageID.176.)  The Report's narrative reflects that, at the time of the accident, Dunklin "was not paying attention and was following too closely behind Vessel #2." (*Id.*, PageID.177.)  The officer further concluded that Brennan, who was operating Vessel #2, "did not contribute" to the accident.  (*Id.*, PageID.180.)[5]  Given these facts, Great Lakes "is ready and willing to pay the Policy's $300,500.00 limits to the persons entitled to them."  (Doc. 13, PageID.130, ¶ 14.)  The trouble is that Great Lakes is facing conflicting claims from both Estate of Bratton (which has already demanded the full Dunklin Policy limits) and Brennan.[6]  This is exactly the sort of scenario for which the interpleader mechanism in federal court was created, and there is nothing improper or unsavory about Great Lakes availing itself of same.  *See, e.g., In re Mandalay Shores Co-Op Housing Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994) ("Interpleader

---

[5]  In its principal brief on the Motion to Dismiss, Estate of Bratton insists that Brennan "clearly bears liability for her own negligent and inattentive operation of the jet ski." (Doc. 15-1, PageID.189.)  Of course, a complete factual investigation must await the full discovery process; however, it bears noting that the Accident Report lacked any finding of negligent/inattentive operation by Brennan.

[6]  With apparently no evidentiary basis, Estate of Bratton repeatedly suggests that Great Lakes is fabricating a claim by Brennan that does not exist.  *See* doc. 15-1, PageID.198 ("Great Lakes should not be allowed to create a controversy … there is no claim being lodged by Ms. Brennan at this time"); doc. 15-1, PageID.192 n.4 (Brennan "*may* be a claimant *vis-à-vis* Great Lakes (a point which is disputed by the Estate)"); doc. 15-2, PageID.205 ("Great Lakes hasn't received any documentation from Shonda Brennan to substantiate the purported claim."). Of course, Brennan has now filed an answer in this interpleader action in which she expressly admits that she is making a claim for the insurance proceeds from the Dunklin Policy.  If Estate of Bratton has demanded the full policy limits (which it has), and if Brennan is making her own claim on the Dunklin Policy (which she is), then plainly Great Lakes faces multiple claims to a limited fund, which places it squarely in the posture of a stakeholder for whom the remedy of interpleader was created.

is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner."); *Hassoun v. Reliastar Life Ins. Co.*, 288 F. Supp.3d 1334, 1345 (S.D. Fla. 2018) ("An action in interpleader affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding.") (citation and internal quotation marks omitted). For all of these reasons, the Court rejects Estate of Bratton's suggestion that it was somehow improper or manipulative of Great Lakes to invoke the remedy of interpleader in the circumstances presented here.

The bulk of Estate of Bratton's principal brief in support of its Motion to Dismiss is devoted to the *Wilton / Brillhart* abstention doctrine, and specifically movant's contention that application of relevant authority "will result in the dismissal of this action based on *Wilton / Brillhart* abstention." (Doc. 15-1, PageID.186.) This species of abstention is designed to assist district courts in balancing state and federal actions in determining whether to exercise their discretion to make a declaration of rights under the Declaratory Judgment Act. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330-31 (11th Cir. 2005). Indeed, *Wilton* was a case in which the Supreme Court "characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (citations omitted). Likewise, *Brillhart* was a case in which the Supreme Court opined that it would be "uneconomical" and "vexatious" for a federal district court to hear a declaratory judgment action, concurrently with ongoing proceedings involving the same parties and same legal issues (not arising under federal law) in state court. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). When the Eleventh Circuit considered these two Supreme Court decisions together in *Ameritas*, it "furnished district courts with guidance in how to wield their *Wilton / Brillhart* discretion under the Declaratory Judgment Act in the presence of parallel state proceedings." *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. King*, 2012 WL 280656, *3 (S.D. Ala. Jan. 30, 2012).

Accordingly, the *Wilton / Brillhart* abstention doctrine was created with the intention of facilitating district courts' efforts to determine how to exercise the special discretion conferred upon them by the Declaratory Judgment Act. An obvious question raised by Great Lakes is

whether *Wilton / Brillhart* principles apply at all in this rule interpleader context. Although Estate of Bratton's principal brief does not address this question, the weight of the persuasive authority lies in its favor on this point. That is to say, federal courts have persuasively recognized that where, as here, a rule interpleader claim is paired with a claim for declaratory relief, the broad *Wilton / Brillhart* standard of discretion is properly applied in the abstention analysis. *See, e.g., Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014) (in rule interpleader action, "*Wilton-Brillhart* abstention should be reconsidered on remand"); *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 134 n.3 (3rd Cir. 2000) ("We have applied *Wilton*'s standard of discretion to interpleader actions as well."); *National Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2nd Cir. 1997) (in action brought under interpleader statute, "the district court did not err as a matter of law in applying the discretionary standard enunciated in *Wilton* when determining whether to abstain from adjudicating the issue of the pilot's coverage under National Union's policy"); *In re $165,388.23 in Interpleaded Funds*, 2020 WL 7083957, *3 (W.D. Ark. Dec. 3, 2020) ("as long as the interpleader relief sought is declaratory in nature, the *Brillhart / Wilton* doctrine extends to interpleader cases"); *American General Life Ins. Co. v. Lowe*, 2015 WL 11251908, *3 (S.D. Fla. Nov. 16, 2015) ("This Court agrees … that the discretionary abstention doctrine of *Brillhart / Wilton*, rather than the 'exceptional circumstances' abstention doctrine of *Colorado River*, applies to an interpleader case such as this one."); *Hartford Fire Ins. Co. v. Coastal Int'l, Inc.*, 2015 WL 4038905, *7 (N.D. Ill. June 30, 2015) (in statutory interpleader context, appellate decisions "together persuade the Court to apply *Wilton-Brillhart*'s discretionary standard in determining whether to abstain"); *see generally NYLife Distributors, Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 380 (3rd Cir. 1995) (recognizing that "interpleader is a suit in equity," such that "[a] federal interpleader court, therefore, by the nature of its jurisdiction proceeds with broad discretion").[7]

---

[7] In arguing otherwise, Great Lakes relies on *Boston Old Colony Ins. Co. v. Balbin*, 591 F.2d 1040 (5th Cir. 1979). However, *Balbin* predates *Wilton*, and "at least two Florida courts have held that *Balbin* is no longer good law in light of subsequent U.S. Supreme Court case law on abstention." *Lowe*, 2015 WL 11251908, at *3; *see also Espat v. Espat*, 56 F. Supp.2d 1377, 1384 (M.D. Fla. 1999) ("A district court has the discretion to dismiss or abstain from an interpleader action where there are parallel state proceedings involving the same parties and issues.").

Under *Wilton/Brillhart* abstention, federal district courts consider the following non-exhaustive list of guideposts to inform the discretionary decision whether to abstain from exercising jurisdiction over state-law claims in declaratory judgment proceedings in the face of parallel litigation in state courts: "(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (2) whether the judgment in the federal declaratory action would settle the controversy; (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue; (4) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' …; (5) whether use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; (6) whether there is an alternative remedy that is better or more effective; (7) whether the underlying factual issues are important to an informed resolution of the case; (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005).

Notwithstanding the foregoing, the Court finds Estate of Bratton's arguments applying these guideposts to this dispute to be unconvincing. For starters, the Estate argues that Alabama state courts have a stronger interest "in determining issues of insurance coverage regarding an Alabama policy." (Doc. 15-1, PageID.195.) This argument misapprehends the nature of Great Lakes' Complaint. Contrary to movant's suggestion, Great Lakes is conceding coverage, not seeking to curtail or disclaim coverage. If this interpleader action moves forward, Great Lakes would deposit the policy limits in the registry of this Court, without contesting coverage. This is a case about allocation of insurance proceeds, not whether the insurer is obligated to provide coverage. Next, Estate of Bratton posits that the federal forum will not have utility in settling, clarifying or otherwise resolving the legal relations at issue. Of course it will. Through use of the Rule 22 interpleader mechanism in federal court, Great Lakes could quickly and efficiently bring to the fore the issue of which claimant (Estate of Bratton or Brennan) is entitled to the contested insurance proceeds, in a manner that is far cleaner and more expeditious for Great

Lakes than the state-court litigation would be.  Indeed, it is unclear whether the Estate's claims against Great Lakes may proceed in state court at this time.[8]

As its next argument for *Wilton / Brillhart* abstention, the Estate contends that the state court is better situated to provide relief than the federal court "because it properly and necessarily recognizes Ms. Brennan [*sic*] status and role as a party defendant in this case." (Doc. 15-1, PageID.195.)  But Brennan is also a party defendant in this interpleader action, which will facilitate a more efficient and effective disposition of the competing claims to the subject insurance proceeds than the state court action, in which Brennan has not filed a cross-claim against Great Lakes and in which the Estate's efforts to obtain the Policy proceeds may be frustrated or delayed by the potential need to obtain a judgment against the insured (Dunklin) in the first instance.  The point is that, while the Estate may be correct that its efforts to pursue relief directly against Brennan (for her purported negligence or recklessness in causing the boating accident) may have a clearer procedural pathway to litigation in state court, Great Lakes is correct that its efforts to determine which claimant(s) is entitled to the Policy proceeds will proceed more effectively and efficiently in this federal interpleader action.  Under the circumstances, the Estate has not shown that the state court will provide a "better or more effective alternative remedy," so as to favor abstention here.[9]  The same goes for the Estate's

---

[8]     As Great Lakes points out, with no rebuttal by Estate of Bratton's briefing, "The state court case cannot proceed against [Great Lakes] until a judgment has been rendered against [Great Lakes'] insured according to the Alabama Direct Action Statute." (Doc. 21, PageID.239.)

[9]     Curiously, the Estate of Bratton takes the position that in this federal interpleader action, "Brennan's rights would potentially be enhanced in a manner that violates Alabama law, while the estate's rights would be severely prejudiced." (Doc. 15-1, PageID.196 n.7.)  The Court is aware of no reason why this might be so.  Even assuming the Estate is correct that a finding that Brennan was contributorily negligent would wipe out any claim she might have for Dunklin Policy proceeds, the Estate offers no reason why a federal court would be incapable of making a contributory negligence finding, or why the parties would be incapable of litigating that issue, as part and parcel of this interpleader dispute.  Likewise, the Estate's bald contention that issues of purported bad faith by Great Lakes cannot be resolved in this federal action, but will necessarily be resolved in the state court action, is inscrutable. (*See id.*)  Recall that in these proceedings, Great Lakes seeks a declaratory judgment "[d]ischarging [Great Lakes] from any and all further liability to [the Estate, Brennan and Dunklin] with prejudice relating in any way to the Policy." (Doc. 13, PageID.132.)  Notwithstanding its argument, the Estate has identified no impediment that will or may prevent it from (i) arguing that alleged bad faith by Great Lakes favors denial of the requested declaratory relief of a discharge from further liability, and/or (ii) bringing a (Continued)

oblique suggestion that the state court is in a better position to evaluate key factual issues than the federal court is. (Doc. 15-1, PageID.196.) The Court is aware of no reason why that may be so, and the Estate has identified none.

Finally, Estate of Bratton argues at length that the "procedural fencing" guidepost favors abstention here. (Doc. 15-1, PageID.196-99.) As discussed *supra*, the Court finds nothing improper in the chain of events culminating in Great Lakes filing this interpleader action. Great Lakes provided insurance coverage to Dunklin. Estate of Bratton made a claim against Great Lakes for the limits of the Dunklin Policy. Great Lakes concurs that the policy limits should be paid out; however, the Estate is not the only claimant. Brennan is also making a claim against Great Lakes for proceeds from the same Dunklin Policy. This is a textbook scenario for which the interpleader device was created. So Great Lakes has filed an interpleader action, properly invoked federal diversity jurisdiction, joined both the insured and the two claimants as defendants, and offered to deposit the policy proceeds in the court registry until such time as this Court determines who the proper recipient(s) and what the proper allocation should be. This course of conduct is not procedural fencing and does not support *Wilton / Brillhart* abstention.[10]

---

counterclaim against Great Lakes for bad faith in these proceedings. As such, the Estate's argument that these issues would be resolved in the state-court action and cannot be resolved in federal court is both unsubstantiated and unpersuasive.

[10]     Three other points bear mention. First, Estate of Bratton suggests that "Great Lakes knew or reasonably should have known of the Estate's intention to file an action in state court." (Doc. 15-1, PageID.197.) That may be so, but Great Lakes had no reason to know that the Estate intended to sue Great Lakes in state court (as opposed to simply filing suit against Dunklin). These circumstances do not amount to an improper "race to the courthouse." Second, Estate of Bratton balks that Great Lakes "is trying to *outsource* its duties to properly and timely investigate and adjust the claims at issue *to this Court*." (*Id.*, PageID.198.) Again, this action appears to be an entirely proper use of the federal interpleader mechanism which exists to safeguard parties subject to overlapping and competing claims for a limited fund, as Great Lakes is. Third, Estate of Bratton posits that proof of procedural fencing may be found in Great Lakes' claim for attorney's fees to be paid out of the policy proceeds. (*Id.*, PageID.198-99.) If, as the Estate contends, Great Lakes is not an innocent stakeholder, then it will be entitled to neither discharge nor recovery of attorney's fees. *See, e.g., Hassoun*, 288 F. Supp.3d at 1345 (explaining that "[a]lthough a successful interpleader action typically results in the court discharging the stakeholder, discharge is improper where the stakeholder is itself alleged to be independently liable to the defendants" and declining to award attorney's fees to the stakeholder). Moreover, courts may deem attorney's fees unwarranted "when a stakeholder's interpleader claim arises out of the normal course of business," a standard that "typically is (Continued)

### III.     Conclusion.

For all of the foregoing reasons, defendant Estate of Bratton's arguments for discretionary abstention pursuant to *Wilton / Brillhart* principles are unconvincing.  On that basis, the Estate's Rule 12(b) Motion to Dismiss (doc. 15) is **DENIED**.  The Estate is **ORDERED** to file its Answer to the Second Amended Complaint by no later than **January 12, 2021**.  A separate briefing order will be entered for Great Lakes' Motion for Deposit of Funds and Related Brief (doc. 19).

DONE and ORDERED this 31st day of December, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

applied to insurance companies." *Mandalay Shores*, 21 F.3d at 383 (citations omitted).  The point is that whether Great Lakes is or is not entitled to attorney's fees is analytically and conceptually distinct from the question of whether Great Lakes has somehow engaged in improper maneuvering by bringing this interpleader action in the first place.